# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**JOHNNY GAFFNEY,**

      **Plaintiff,**

**vs.**                                                                    **Case No.  4:18cv506-RH-MAF**

**CHRISTOPHER EDELEN, et al.,**

      **Defendants.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, proceeding pro se, initiated this case in November 2018. Plaintiff was granted leave to proceed in forma pauperis, ECF No. 8, and his amended complaint, ECF No. 9, was served on the Defendants. Discovery closed on January 24, 2020, *see* ECF No. 54, and Defendants filed a motion for summary judgment in February 2020 supported by numerous exhibits.  ECF No. 60.  Plaintiff was advised of his obligation to respond to the motion, ECF No. 61, and he has filed a memorandum, ECF No. 62, an affidavit, ECF No. 64, and several additional exhibits.  ECF No. 63.  The motion is ready for a ruling.

Additionally, an Administrative Order was entered in early April 2020, ECF No. 65, reassigning this case to the undersigned Magistrate Judge. The case number has changed as shown above and must be included on any further documents filed in this case, including objections, to reflect the change in judicial assignments.

**Allegations of the Amended Complaint, ECF No. 9**

Plaintiff's case is brought against six Defendants, all of whom are sued in both their individual and official capacities, with the exception of the Secretary[1] who is sued in his official capacity only.  ECF No. 9 at 1.  The events at issue occurred at Taylor Correctional Institution.  Plaintiff contends that he sought protection from gang members who were seeking to extort money from him, but Defendants Grubbs, Harmon, and Hill refused to assist him.  *Id.* at 6-7.  As a result, Plaintiff was attacked by another inmate and suffered cuts which required stitches.  *Id.* at 7.

Plaintiff was dissatisfied with the responses he received from the grievances he sent to Defendants Wood and Edelen and contends that the

---

[1] The amended complaint named former Secretary Julie L. Jones as Defendant, ECF No. 9 at 1, but because Plaintiff sues that official in official capacity only, current Secretary Mark S. Inch was substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).  ECF No. 10.

Defendants were aware of widespread abuse and the denial of protection for inmates.  Plaintiff also contends that he was transferred to Desoto Correctional Institution in September 2018 and was again subjected to extortion by a gang member.  *Id.* at 10.  He alleges that he began paying the extortion money to avoid further assault, fearing that officials at Desoto "would also deny protection."  *Id.*  However, by January 2019, when his funds were depleted, Plaintiff was "forced to seek protection by prison officials" and asserts at that point, he was in fear for his life.  *Id.*

Plaintiff alleges that the Secretary had him transferred in reprisal for filing grievances.  *Id.* at 11.  He further suggests that a policy of the Secretary is used to deny inmates protection even though lives are in danger.  *Id.* at 10-11.  Plaintiff states that, pursuant to policy, an inmate is denied protection unless he identifies the gang member who is threatening him.  *Id.* at 10.  Plaintiff contends that "if he gives the name of the gang member, this gang member has the capability of finding where Plaintiff goes and contact gang members of the next institution and extortion will be the least of Plaintiff's worries."  *Id.* at 11.

As relief, Plaintiff seeks a declaratory judgment, compensatory damages, punitive damages, and other equitable relief as deemed just and proper. *Id.* at 16.  Plaintiff's complaint was signed under penalty of perjury.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must

then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Cir. 2003) (quoting <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Hickson Corp.</u>, 357 F.3d at 1260 (quoting <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, <u>Beard</u>, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and

disputed matters of professional judgment."),[3] but "only if there is a

'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557

U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where

the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec.

Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**The Relevant Rule 56(e) Evidence**

**A.    Plaintiff's evidence**

Plaintiff's affidavit, ECF No. 64, reaffirms the truth of the factual

allegations made in the amended complaint.  *Id.* at 2, 5.  Plaintiff has

provided testimony[4] that on July 16, 2018, at approximately 2:30 p.m., he

---

[3]  Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

[4]  Statements made in a complaint sworn under penalty of perjury, and a sworn affidavit attached to a response to summary judgment is properly treated as testimony. Sears v. Roberts, 922 F.3d 1199, 1207-09 (11th Cir. 2019); United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (noting "that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment"); Barker v. Norman, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment).

spoke with Defendant Harmon about obtaining "protection from gang members wishing to extort money" from him.  ECF No. 9 at 6.  Defendant responded, "Sorry about your luck, but either go to the canteen or go back to the dorm."  *Id.*  Plaintiff tried to explain why he could not go to his dorm, but Defendant Harmon falsely told Plaintiff there was no room in confinement for him.  *Id.*  Plaintiff contends that statement was false because an inmate had been released earlier that day.  *Id.*  Plaintiff then inquired about whether there was room at the annex but Defendant Harmon said there was no room there either, a statement Plaintiff also contends was false.  *Id.*

Defendant Grubbs asked Defendant Harmon who he had been speaking with and was told it was Plaintiff.  Defendant Grubbs replied, "The child molester, he deserves everything he gets."  ECF No. 9 at 6.  Plaintiff construes that comment as demonstrating that Defendant Grubbs "would refuse Plaintiff protection due to Plaintiff's criminal offense."  *Id.*

Later on, Defendant Harmon observed Plaintiff walking around the compound and called for him.  *Id.* at 7.  Defendant Harmon instructed Plaintiff "to return to his dorm or go to the canteen and pay them people." *Id.*

Plaintiff was then brought into the "captain's office" and questioned by Defendant Hill.  *Id.*  Defendant Hill asked "who the gang members were and what gang they were members of."  ECF No. 9 at 7.  Plaintiff said he did not know and Defendant Hill told him that they had "a policy," and "since Plaintiff could not give her that information, she would not provide protection."  *Id.*  Plaintiff returned to his dormitory.  *Id.*  Plaintiff contends there was no such "policy" and Defendant Hill's assertion of one was false. *Id.* at 9.

Plaintiff also said that he had been leaning on the wall inside Captain Hill's office during their discussion when Defendant Grubbs came back into the room.  ECF No. 9 at 7.  Defendant Grubbs kicked Plaintiff's cane in the hope that he "would fall and injure himself.  *Id.*

At approximately 5:30 p.m. when Plaintiff's dormitory was released for the evening meal, "someone came up behind Plaintiff and cut him in several places on his right ear and neck."  *Id.* at 7.  Plaintiff was taken to the medical unit for treatment and his injuries were photographed.  *Id.*  He was then taken to a confinement cell, *id.,* and several days later he was interviewed by an Inspector from the Inspector General's Office.  *Id.* at 8. Plaintiff filed an informal grievance with the assistant warden on July 18,

2018, which was forwarded to the Inspector General's Office for review.[5]

*Id.* at 7-8; *see also* ECF No. 64 at 2.  Plaintiff then filed a formal grievance

to Defendant Edelen, which was answered and denied by Defendant

Wood.  *Id.* at 8-9.  Plaintiff's appeal to the Secretary was filed on August

13, 2018.  ECF No. 64 at 3.  Review of the appeal reveals that Plaintiff was

seeking to have the three staff members (Defendants Hill, Harmon, and

Grubbs) disciplined.  ECF No. 64 at 17.

Plaintiff contends that after he was transferred to Desoto C.I., he was

again subjected to extortion and threatened.  ECF No. 9 at 9.  Again, a

prison official told Plaintiff that if he "would not give the name of the gang

member" who was threatening him, he would be denied protection and

placed back into open population.  *Id.* at 10.  When Plaintiff did not give the

name of the gang member, "Captain McManus filed a disciplinary report

against Plaintiff for bartering with others to keep from placing [him] in

confinement under protection."  *Id.*

Plaintiff attempted to file a grievance of a "sensitive nature" directly to

the Secretary in January 2019, complaining about his transfer to Desoto

---

[5] Plaintiff submitted a copy of the informal grievance, ECF No. 64 at 10-11, which
alleged that Defendants Harmon, Hill, and Grubbs denied him protection.  A copy of
Plaintiff's formal grievance and the response thereto was also submitted.  *Id.* at 13-15.

Correctional Institution.  ECF No. 64 at 21.  Plaintiff said that Desoto was "more violent than Taylor" and he had "come to believe that [he] was ent to Desoto C.I. as reprisal for" filing grievances.  *Id.*  Plaintiff requested a transfer to a "less violent" institution.  *Id.*  Plaintiff's grievance was "returned without action" and he was advised there was "no longer a sensitive category of grievance/appeal."  *Id.* at 23.  The response further stated that the grievance was "not accepted as a grievance of reprisal."  *Id.*

Plaintiff's affidavit, ECF No. 64, concludes by clarifying that although he originally named former Secretary Julie L. Jones in her official capacity, Plaintiff "was actually suing FDOC for the retaliatory transfer to DCI . . . ." *Id.* at 5-6.  Plaintiff concedes "that neither Secretary had personal or official knowledge of" the alleged retaliation, and he contends that he is not actually attempting to name the Secretary as a Defendant.  *Id.* at 6. Plaintiff asserts that he named the Secretary as Defendant in this case solely to avoid the Eleventh Amendment bar had he named the "FDOC as a defendant."  *Id.* at 6.

**B.    Defendants' Evidence**

Defendant Harmon has submitted a declaration in which he categorically denies "that on July 16, 2018, [he] had any" conversation with

Plaintiff, "or ever denied him 'protection' from any inmate, on that date or any other." ECF No. 60, Ex. A (ECF No. 60-1).[6] Defendant Harmon does not know Plaintiff and cannot recall having a conversation with Plaintiff "at any time." *Id.* at 1. He states that he has no knowledge of the incident complained of in this lawsuit. *Id.* Defendant Harmon further declares that he "had no knowledge of any need" to protect Plaintiff and states that Plaintiff never advised him of any such need. *Id.*

Defendant Grubbs also submitted a declaration, noting that Plaintiff "was involved in an incident on July 16, 2018, at Taylor CI, outside of D-Dormitory." ECF No. 60, Ex. B (ECF No. 60-2). However, Defendant Grubbs states that he does "not recall having any conversation or interaction with" Plaintiff prior to the assault on Plaintiff. *Id.* at 1. Defendant Grubbs denies that Plaintiff ever advised him of a "need for protection from any other inmates," and he specifically denies that he "denied him any needed protection." *Id.*

Defendant Hill states in her declaration that her only contact with Plaintiff was after the assault. ECF No. 60, Ex. C (ECF No. 60-3). She

---

[6] Because Plaintiff, as a pro se prisoner, does not have access to the electronic docket, the Exhibit numbers are also used when citing to Defendants' evidence.

states that she arrived outside of D-dormitory in response to an emergency call that an inmate "was bleeding" and observed Plaintiff "bleeding from the side of his head." *Id.* at 1. She questioned Plaintiff about what happened, and Plaintiff said "someone had cut him," but Plaintiff "could not identify the inmate that attacked him." *Id.* Plaintiff was "taken to medical for evaluation and treatment" and Defendant Hill had no other interaction with Plaintiff. *Id.* She denies that Plaintiff ever approached her and requested protection. *Id.*

Defendants also submitted a portion of Plaintiff's deposition testimony. ECF No. 60, Ex. F (ECF No. 60-6). When questioned as to whether Defendant Hill had notice prior to the assault that Plaintiff needed protection, Plaintiff said: "Nothing before then because nothing had happened." *Id.* at 5. Plaintiff said she was put "on notice that day." *Id.* Plaintiff acknowledged that he could not give her "any specific names of inmates" and reported that Defendant Hill told him "she wouldn't provide [him] with the protection because [he] didn't give names." *Id.*

Defendant Wood declares that Plaintiff's allegations "are totally false and without merit." ECF No. 60, Ex. D (ECF No. 60-4). Defendant Wood, the Assistant Warden for Programs, was involved only in responding to Plaintiff's grievance on August 3, 2018. *Id.* at 1. Prior to the assault on

Plaintiff, Defendant Wood "had no knowledge of [Plaintiff's] request or alleged need for protection from any other inmate." *Id.* Defendant Wood reviewed records which show that Plaintiff was "placed in administrative confinement on July 16, 2018," for a "protection review." The Institutional Classification Team (I.C.T.) approved Plaintiff's placement in confinement for protection status on July 18, 2018. *Id.* The I.C.T. recommended that Plaintiff be transferred based on information obtained during the investigation of Plaintiff's assault. *Id.* The State Classification Office approved the transfer recommendation and Plaintiff was transferred on August 13, 2018, to resolve his need for protection. *Id.* at 1-2. Defendant Wood reiterates that prior to the July 16th incident, she had "no knowledge of" Plaintiff's need for protection. *Id.* at 2.

Defendant Edelen is the Warden at Taylor C.I. ECF No. 60, Ex. E. He states in his declaration that he was "not made aware" of any protection needs concerning Plaintiff. *Id.* Following the assault on July 16th, Plaintiff was placed in confinement pending a protection review. *Id.* Plaintiff remained in administrative confinement until he was transferred. *Id.* Defendant Edelen "had no knowledge of this incident prior" to a "report being submitted regarding the July 16, 2018 incident." *Id.*

Case No. 4:18cv506-RH-MAF

Plaintiff's deposition testimony is also relevant to his claim against the Secretary.  ECF No. 60, Ex. F (ECF No. 60-6).  Plaintiff said that Defendant Inch, nor Julie Jones knew anything about the incident.  *Id.* at 4.  Plaintiff clarified that he is "claiming that DOC had [him] transferred . . . as reprisal" for the grievances he filed, and only used the Secretary's names "to get to DOC."  *Id.*  Plaintiff said "I'm actually suing DOC and not him, okay, because in 1983, I have to have a name."  *Id.*

**Analysis**

**1.    Eleventh Amendment Immunity**

Plaintiff has named Defendant Inch in his official capacity only, but he names all other Defendants in both their individual and official capacities. Plaintiff concedes Defendant Inch had no involvement in the events at issue in this case and was named only as a way to sue the Florida Department of Corrections.  Plaintiff seeks only monetary damages and a declaratory judgment in this case; he does not seek prospective injunctive relief.

Absent limited exceptions, the State of Florida and its agencies are immune from suit in this Court by force of the Eleventh Amendment.  Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); *see also*

Kentucky, 473 U.S. at 169, 105 S. Ct. at 3107 (reiterating that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). That "bar remains in effect when State officials are sued for damages in their official capacity." Kentucky, 473 U.S. at 169, 105 S. Ct. at 3107; *see also* Odebrecht Const., Inc. v. Secretary, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) (same). Thus, Plaintiff cannot sue Defendant Inch as a substitute for naming the Department of Corrections.

There are, however, exceptions to Eleventh Amendment immunity. The first two exceptions come through waivers of sovereign immunity. *See* Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985); Gamble v. Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986). Either a State may waive its immunity, or Congress may override a state's immunity pursuant to its power under § 5 of the Fourteenth Amendment. Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 119 S. Ct. 2199, 2205-06, 144 L. Ed. 2d 575 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55, 116 S. Ct. 1114, 1124, 134 L. Ed. 2d 252 (1996) (concluding "that the type of relief sought is irrelevant to whether Congress has power to

abrogate States' immunity.").  "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." Virginia Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011).  Congress did not abrogate a state's immunity when enacting § 1983, Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974), nor has Florida waived its immunity and consented to suit in federal court under § 1983.  Gamble, 779 F.2d at 1520.

A third exception is through Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908).  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L. Ed. 2d 438 (1997) (reaffirming that prospective relief may be sought against a state official in federal court). Sandoval v. Hagan, 197 F.3d 484, 492 (11th Cir. 1999) (citing Summit Med. Assoc. v. Pryor, 180 F.3d 1326, 1336-38 (11th Cir. 1999).  The Ex parte Young exception holds that a state official who enforces state law which conflicts with the superior authority of the federal Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."  Stewart, 563 U.S.

at 254, 131 S. Ct. at 1638. Accordingly, determining whether this exception applies requires answering a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." 563 U.S. at 255, 131 S. Ct. at 1639 (citations omitted).

Here, Plaintiff has not requested prospective injunctive relief. Moreover, Plaintiff indicates within his affidavit that he does not need future injunctive relief. ECF No. 64 at 5. Plaintiff's complaint presents factual allegations which are based entirely on the events from 2018; there are no allegations of ongoing issues. Thus, summary judgment should be entered in favor of Defendant Inch pursuant to the Eleventh Amendment. In addition, summary judgment should be granted in favor of all other Defendants who were sued in their official capacities.

## 2.    Eighth Amendment

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Although the Eighth Amendment does not require comfortable prisons, it prohibits inhumane ones. *Id.* The Eighth

Amendment[7] guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities."  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (quoted in <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety."  <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in <u>Collins v. Homestead Corr. Inst.</u>, 452 F.App'x 848, 850-851 (11th Cir. 2011)).  The Eighth Amendment "imposes duties" on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'"  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)) (quoted in <u>Bowen v. Warden Baldwin State Prison</u>, 826 F.3d 1312, 1319-20 (11th Cir. 2016)).

In the context of a claim that officials failed to safeguard an inmate's safety, a defendant "prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware,

---

[7] "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation."  <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1303-04 (11th Cir. 2010).  This case presents a conditions of confinement claim, but does not raise an excessive force or deliberate indifference to medical needs claim.

exists and the official does not respond reasonably to the risk." Caldwell v.

Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoted in

Brooks v. Warden, 800 F.3d 1295, 1300 (11th Cir. 2015)).  It is Plaintiff's

burden to "show: (1) a substantial risk of serious harm; (2) the defendants'

deliberate indifference to that risk; and (3) a causal connection between the

defendants' conduct and the Eighth Amendment violation." Brooks, 800

F.3d at 1300.  "Not 'every injury suffered by one prisoner at the hands of

another ... translates into constitutional liability for prison officials

responsible for the victim's safety.'" Farmer, 511 U.S. at 834, 114 S. Ct.

1970 (quoted in Bowen, 826 F.3d at 1320).

The first element, a substantial risk of serious harm, is evaluated

using an objective standard.  *Id.*  "There must be a 'strong likelihood' of

injury, 'rather than a mere possibility,' before an official's failure to act can

constitute deliberate indifference." Brooks, 800 F.3d at 1301 (citing to

Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam)

(quoting Edwards v. Gilbert, 867 F.2d 1271, 1276 (11th Cir. 1989))).

Furthermore, a "generalized awareness" of some "problematic nature" is

insufficient to support an Eighth Amendment claim. Carter v. Galloway,

352 F.3d 1346, 1350 (11th Cir. 2003) (explaining that "before [a

defendant's] awareness arises to a sufficient level of culpability, there must

be much more than mere awareness of [an inmate's] generally problematic

nature") (quoted in <u>Bowen</u>, 826 F.3d at 1321-22). "[W]ithout knowledge 'of

a particularized threat or fear,'" it cannot be said that a defendant prison

official "actually drew the inference" that the plaintiff faced "a substantial

risk of serious harm." <u>Bowen</u>, 826 F.3d at 1322 (quoting <u>Carter</u>).

    In this case, Plaintiff's evidence is that he first spoke to Defendant

Harmon about needing "protection from gang members wishing to extort

money" from him.  During a second conversation with Defendant Harmon

later in the afternoon, Defendant Harmon told Plaintiff "to return to his dorm

or go to the canteen and pay them people."  Plaintiff has not provided

evidence which shows that he specifically requested protective

management, nor did Plaintiff provide evidence showing that he advised

Defendant Harmon that he was at risk of physical assault.  Rather, Plaintiff

said he needed protection from monetary extortion.  Concerns about

paying money are substantially different than advising a prison official that

Plaintiff was threatened with physical violence.  There is no evidence that

Plaintiff ever reported a concern that he was in physical danger at Taylor

C.I.  There is no evidence of the manner in which Plaintiff contends he was

being extorted.  It is unclear whether someone was demanding that Plaintiff

pay money or purchase items in the canteen.  Furthermore, Plaintiff does

not say what would happen if he did not give up the money or make

canteen purchases.  Plaintiff has not shown that he was threatened with

physical violence if he did not do as the unidentified gang member

demanded.  More importantly, there is no evidence that Plaintiff ever

conveyed such a threat to prison officials.

It may be inferred that Plaintiff was requesting protective

management based on Plaintiff's inquiry about whether there was room in

confinement for him.  Nevertheless, such evidence is objectively insufficient

to show that Defendant Harmon was aware that Plaintiff faced a

"substantial risk" of serious physical harm.  Plaintiff's comments to

Defendant Harmon do not suggest anything more than a "mere possibility"

of *some* type of harm; that is less than the "strong likelihood" showing that

must be made.

Furthermore, Plaintiff does not provide evidence that he advised

Defendant Harmon that he feared physical harm nor has it been shown that

Plaintiff explained the nature of the extortion threat such that it should be

viewed as constituting a substantial risk of serious harm. Summary judgment should be granted in favor of Defendant Harmon.

There is also no evidence that Defendant Grubbs knew that Plaintiff was at a substantial risk of serious harm either. Plaintiff has not come forward with any evidence showing that he addressed Defendant Grubbs about needing protection. Plaintiff did not personally speak with Defendant Grubbs, nor did he ask any other person to speak to Defendant Grubbs on his behalf about needing protection. Rather, Plaintiff's evidence is that he overheard a conversation between Defendant Grubbs and Defendant Harmon. The comment attributed to Defendant Grubbs by Plaintiff (that Plaintiff "deserves everything he gets") is not appropriate and is not condoned. However, even if it is accepted that this statement was made, and even proceeding with the inference that Defendant Grubbs would not have been upset if Plaintiff had been injured, there is simply insufficient evidence to show that Plaintiff faced a substantial risk of harm, or that Defendant Grubss was aware of any such risk.

It is not enough to assert that an official "should have known" that Plaintiff was in danger and needed protection. *See* <u>Averhart v. Warden</u>, 590 F. App'x 873, 875 (11th Cir. 2014) (citing <u>Hale v. Tallapoosa Cnty.</u>, 50

F.3d 1579, 1582-83 (11th Cir. 1995) and noting that "[a] prison official's failure to prevent inmate-on-inmate violence may constitute deliberate indifference, if the prison official knew there was a substantial risk of serious harm and then knowingly or recklessly disregarded that risk."). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  In hindsight, it may be assumed that a monetary extortion could lead to physical assault, and a prison official should have perceived such a risk; yet that is not a sufficient basis to support an Eighth Amendment claim.  Because Plaintiff did not speak with Defendant Grubbs or request help from him, and because Plaintiff has not shown that he alerted any prison officials to a "substantial risk of serious harm," Defendant Grubbs cannot be held liable for failing to protect Plaintiff.

Plaintiff did, however, speak with Defendant Hill about the situation. She asked Plaintiff who the gang members were and the name of the gang.  Plaintiff said he did not know, and Defendant Hill told Plaintiff that without such information, no protection could be provided.   Without more, that conversation is not enough to show that under the objective standard,

Plaintiff faced a "strong likelihood" of injury, "rather than a mere possibility." It is not objectively reasonable to believe that Plaintiff was in danger from an unknown source if he could not, or was otherwise unwilling, to identify the gang or the person who was attempting to extort money from him.

An inmate's failure to identify his or her future attacker by name does not shield prison officials from liability.  Green v. Hooks, 798 F. App'x 411, 424 (11th Cir. 2020).  In Rodriguez v. Secretary for Department of Corrections, we found that "[A]n inmate is not required to identify the individual who poses a threat so long as the inmate provides prison officials with other specific facts that put prison officials 'on actual notice of a substantial risk of harm.'"  Green, 798 F. App'x at 424 (quoting Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 621 (11th Cir. 2007)).  Yet in this case, Plaintiff did not provide any other information which revealed he had been threatened or that he believed he was at risk of physical assault.

It has been well established that a prison official is not "liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511

U.S. at 837, 114 S. Ct. 1970 (quoted in <u>Lane v. Philbin</u>, 835 F.3d 1302,

1308 (11th Cir. 2016) (noting that an official does not escape liability just

because the prisoner did not tell anyone that he was threatened if the

officials otherwise had "subjective knowledge of the substantial risk of

harm" the inmate faced).  In <u>Lane</u>, "numerous stabbings and beatings" of

non-Muslim and non-gang members had taken place in Valdosta State

Prison's E-Building, and officials were well aware of the fact that numerous

weapons were made and concealed in its dormitories as inmates were

threatened with transfer to that building.  835 F.3d at 1306.  The Court

found that, at the motion to dismiss stage of litigation, the complaint

sufficiently alleged that conditions were extreme, frequent, and well known,

and that E-building lacked sufficient supervision.  *Id.* at 1307.

Here, there are no such objective factors.  Plaintiff has not provided

evidence of extreme conditions at the institution, nor has he shown that

violence was frequent or that prior extortions of money had led to physical

assault.  There is one assertion within the complaint that two weeks prior to

Plaintiff's assault, a riot between two gangs occurred at the institution.

ECF No. 9 at 5.  Yet that one isolated incident is not enough to show a

substantial risk of harm to Plaintiff and, moreover, there is no evidence that

the riot happened due to extortion.  "[O]ccasional, isolated attacks by one

prisoner on another may not constitute cruel and unusual punishment, [but]

confinement in a prison where violence and terror reign is actionable."

Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (citation and

internal quotation marks omitted) (quoted in Lane, 835 F.3d at 1307).

Plaintiff's evidence is insufficient to show an actionable claim against

Defendants Harmon, Grubbs, or Hill.

It has not gone unnoticed that Defendants refute Plaintiff's

allegations.  While there is a disputed issue of fact over when Plaintiff

previously sought protection from Defendants Harmon, Grubbs, or Hill, that

dispute does not preclude granting summary judgment in Defendant's

favor.  The reason is that Plaintiff has not provided evidence that he faced

a substantial risk of harm.  Thus, it becomes immaterial whether or not

Plaintiff communicated the risk to Defendants because it was not a

substantial one.  At most, Plaintiff alerted Defendants to a vague and

generalized problem, not to a substantial risk of serious harm.  *See* Carter

v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003) (holding that inmate's

complaints were too vague to put prison official on notice of a substantial

risk of harm).  Learning that an inmate is threatened with monetary

extortion "does not provide a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed." <u>Carter</u>, 352 F.3d at 1350.  Plaintiff did not communicate a likelihood of physical assault to Defendants; he complained only of monetary extortion.  Summary judgment should be granted in favor of Defendants Harmon, Grubbs, and Hill.

Finally, Plaintiff's claims against Defendants Wood and Edelen are also insufficient.  Plaintiff has come forward with no evidence to show that either Defendant was aware of a need to protect Plaintiff and failed to do so.  Denying a grievance filed after an incident does not make a supervisory prison official responsible for the actions of officers involved in the incident alleged; that is especially so when the actions of those officers was not unconstitutional.  Plaintiff did not provide evidence showing that there were widespread issues involving monetary extortion of inmates leading to violence such that Defendants Wood or Edelen were on notice of a need to provide training or take other corrective measures.  Summary judgment should be granted in favor of Defendants Wood and Edelen.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that

Defendants' motion for summary judgment, ECF No. 60, be **GRANTED**

and judgment be entered in Defendants' favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on May 22, 2020.


S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**